## SUPERIOR WHOLESALE GROCERY CO v YOUNGSTOWN (city)

Ohio Appeals, 7th Dist, Mahoning Co
Decided July 11, 1930

Morris Mendelssohn for Grocery Co.
Carl Armstrong, Youngstown, for City.

ROBERTS, J.

It is claimed the verdict was against the decided or manifest weight of the evidence. There is perhaps no material dispute concerning the facts in this case. The plaintiff was engaged in the Wholesale Grocery business and in the operation of its business used several trucks, one of which was being used in the business of the company on the 31st day of August, 1927, and was proceding southerly on Glennwood Avenue, a paved street with a single street car track in the center thereof. Hutch, the driver of the truck, perceiving that a street car was following him, pulled out to the curb on his right and as he passed under this tree the truck, which was nine and one-half or ten feet high, came into contact with a limb of considerable size, with the result that the truck was damaged to the extent of several hundred dollars, and for which damages recovery was sought in this action.

Two ordinances of the city were introduced in evidence as being claimed to be indicative to some extent of the duty of the city. Chapter 35, Section 532, is offered, reading as follows:

"Trees obstructing travel. A tree growing within the limits of a public street, sidewalk or other public place in the city which obstructs or impedes travel, or which stops, restricts or retards the flow of sewage and water, or which heaves up and destroys sidewalks, curbing or pavement in a public thoroughfare, is hereby declared a nuisance, and whenever in the opinion, discretion and judgment of the deputy director of public works any tree should for any reasons hereinbefore stated be removed, it shall be the duty of the deputy director of public works to forthwith cut down and remove said tree."

Section 511 was also offered, which refers to the trimming and removing of shade trees where they interfere with the light from street lamps and where they need trimming for any reason, but not directly applying to the present situation.

The verdict in this case was not tested by interrogatories or otherwise, so that this court has no means of knowing whether the jury in finding for the defendant determined as a matter of fact that the city was not guilty of negligence, and that was the claim of the city in this action, or whether the plaintiff could not recover because of contributory negligence on its part.

Hutch, the driver of the car, was interrogated in cross examination and gave answers as follows, commencing on page 36 of the record:

"Q  Do you remember testifying in the previous case that you could see the limb when you were about eight or ten feet from it, but you thought the top of the truck could clear the limb, do you remember that?

A  I think I do.

Q  You do remember that?

A  Yes, sir.

Q  If I get it clear, you are telling me about what you told me then, when you were about eight or ten feet from that limb you saw it and you were going about ten or twelve miles per hour, maybe fifteen, that you could have stopped your truck in one or two feet, but you thought the top of the truck would go under the limb?

A  Yes, sir.

Q  You didn't stop it?

A  I didn't stop.

Q  Before you came to the limb?

A  No.

Q  Although you could have stopped your truck before you hit the limb?

A  I could have; yes, sir."

Judge Moore of the Municipal **Court was** called and testified concerning the testimony given by this witness in the trial in the Municipal Court:

"Q  Do you remember him saying substantially this, that he could have stopped his truck and he did stop it in one or two feet?

A  The witness was asked the question how far away he was when he first saw the limb and then was asked in what distance he could stop his truck. He answered he could have stopped it in less distance than he was away from the tree when he first saw it.

Q  Do you remember what his answer was why you didn't stop your car?

A  I remember in substance he said he thought he could get under it."

Probably there is no doubt but that the limb of this tree projected out over the paved street at a distance of less than twelve feet above the pavement. Here we have the testimony of the municipal judge concerning the testimony of the driver, and the driver testifies to the same effect, that he saw the limb as he approached it. He was wholly cognizant of its existence. He could have stopped if he had so desired, but in mistake in judgment as to the height of it, or the height of his truck perhaps, he decided he could pass under it in safety and attempted to do so.

This clearly indicates contributory negligence on the part of the agent and servant of the plaintiff.

As was suggested before, whether this was determinative of the issues in the opinion of the jury, or whether the jury thought there was no negligence on the part of the city, we do not know, but under the circumstances such as exist in this case, even if it be determined that there was error upon one proposition, either upon contributory negligence or upon the proposition of there being no negligence of the defendant, this court is not authorized to reverse a case without knowledge as to whether the jury decided and was influenced by the proposition which appears to be erroneous, if such was the fact, under this situation the court has no alternative but to affirm the judgment, which is accordingly ordered.

Pollock, and Farr, JJ, concur.